**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

**CIVIL ACTION NO. 4:06CV-83-M**

**CAROL SHEPHERD**                                      **PLAINTIFF**

**v.**

**RELIANCE STANDARD LIFE INSURANCE CO.**           **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on motions for judgment on the administrative record by both Plaintiff, Carol Shepherd ("Shepherd"), and Defendant, Reliance Standard Life Insurance Co. ("Reliance"). (DN 11,12) . Fully briefed, this matter stands ripe for decision. For the following reasons, the Court **AFFIRMS** Reliance's denial of benefits to Ms. Shepherd.

**I. Facts**

Ms. Shepherd was a forklift operator at Daramic, LLC, for nearly fourteen years. (AR 83). On August 14, 2004, while at work, Ms. Shepherd had what has been described as an "anxiety attack" wherein she became emotional, hysterical, and angry and hostile with her co-workers and supervisors. During this incident, Ms. Shepherd drove her forklift in a manner that caused concerns for her safety and the safety of her co-workers. (AR 20-28). Subsequently, Daramic suspended Ms. Shepherd from work for 60 days and required her to receive counseling for anger management. (AR 29-32). Ms. Shepherd was pregnant when this incident occurred and, following her 60-day suspension, she took maternity leave and planned to return to work on March 15, 2005.

During her suspension and maternity leave, Ms. Shepherd was treated at the Owensboro Medical Health System Outpatient Counseling Center, which consists of three psychiatrists. At this Center, she was evaluated and treated by Lorena Ard, a nurse practitioner. Nurse Ard diagnosed

Ms. Shepherd with major depression and anxiety disorder (AR 190) and began to treat Ms. Shepherd regularly. (AR 352-374). On September 16, 2004, Ms. Shepherd also began counseling for anger management, as required by her employer, with Donald Preuss, LMFT, PLC. Mr. Preuss, too, began to see Ms. Shepherd regularly. (AR 315-324, 494).

As the time for her return to work neared, Ms. Shepherd sought to return to work on the day-shift, even though she had worked the swing-shift prior to her suspension and maternity leave. Ms. Ard and Mr. Preuss recommended that she not return to the swing-shift because they believed the sleep disturbances associated with that shift aggravated Ms. Shepherd's psychological conditions. (AR 602, 493). However, Daramic denied Ms. Shepherd's request to work the day-shift. (AR 317). Subsequently, both Nurse Ard and Mr. Preuss expressed their opinions that due to her psychological conditions, Ms. Shepherd should not return to work at all. (AR 602, 495, 308). Thereafter, Ms. Shepherd applied for disability benefits through both the Social Security Administration and Reliance.[1]

As an employee of Daramic, Ms. Shepherd participated in a long-term disability plan with Reliance. Under the Reliance plan, Ms. Shepherd is entitled to 60% of her monthly earnings, upon a finding by Reliance that she has become "totally disabled." (AR 104). The plan defines "total disability" under an "own occupation" standard for the first 24 months of disability and under an "any occupation" standard for the period after the first 24 months. With respect to Ms. Shepherd, the plan states that "totally disabled" means that "as a result of an Injury or Sickness...during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured

---

[1] Plaintiff's brief notes that the Social Security Administration ("SSA") found Ms. Shepherd to be "totally disabled" and awarded her disability benefits. However, the findings of the SSA and its resulting decision are not in the administrative record.

cannot perform the material duties of his/her regular occupation..." (AR 107). Reliance has denied Ms. Shepherd's application for long-term disability benefits on the theory that, even though Ms. Shepherd may be unable to perform her "job" at Daramic, where she is required to work the swing-shift, Ms. Shepherd is still able to perform her "own occupation" - - which Reliance defines as "a vocation or profession as it typically exists in the general economy." According to Reliance, Ms. Shepherd is not disabled because she could work as a forklift operator at another company where she is not required to work swing-shifts. (AR 66-67).

Reliance largely bases its finding that Ms. Shepherd is not disabled on the opinion of Dr. Kevin Hayes, a psychiatrist who reviewed Ms. Shepherd's medical records for Reliance. In his file review, Dr. Hayes concluded that her medical records did "not support any degree of severe impairment from the date of loss to the current time." (AR 168). He found that her mood disorder could not have been severe because she was never treated by a psychiatrist and had had only "minimal, infrequent encounters" with Nurse Ard and Mr. Preuss. (AR 167) He further opined that Ms. Shepherd's "ability to manage and care for her children, workout at the gym, and engage in a recreational trip to Florida with relatives" did not support a finding of "significant deterioration functioning." (Id.).

Following Reliance's final denial of her claim for long-term disability benefits, Ms. Shepherd brought this civil action pursuant to ERISA, § 502(a).

. **II. Standard of Review**

A denial of benefits challenged under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§1001, et seq., is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits

or construe the terms of the plan. Williams v. International Paper, 227 F.3d 706, 710 (6th Cir. 2000). Where an ERISA plan expressly affords discretion to trustees to make benefit determinations, a reviewing court should apply the arbitrary and capricious standard to the administrator's actions. Id. at 711. Here, both parties agree that "arbitrary and capricious" is the correct standard of review because the policy contains an explicit grant of discretionary authority to Reliance to interpret the terms of the policy and to determine eligibility for benefits.

The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. Id. at 712; Davis v. Kentucky Fin. Cos. Retirement Plan, 887 F.2d 689, 693 (6th Cir. 1993). When applying the arbitrary and capricious standard, a court must decide whether the plan administrator's decision was "rational in light of the plan's provisions." Williams, 227 F.3d at 712 (quoting Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir. 1998)). Accordingly, where it is "possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Williams, 227 F.3d at 712 (quoting Davis, 887 F.2d at 693)

Despite this deferential standard, however, the court's review is no mere formality. The arbitrary and capricious standard does not require the court merely to rubber stamp the administrator's decision. Instead, the court is required to review the quality and quantity of the medical evidence and the opinions on both sides of the issues. Glenn v. MetLife. 461 F.3d 660, 666 (6th Cir. 2006).

### III. Discussion

The Plaintiff argues that the Court should hold that Reliance's decision to deny her long-term disability benefits was arbitrary and capricious because (1) Dr. Hayes, the doctor who reviewed Ms. Shepherd's medical records for Reliance did not conduct a psychological evaluation of Ms.

Shepherd, but merely relied on a "file review" of her records to support his opinion; (2) Dr. Hayes did not adequately consider the effect of Ms. Shepherd's psychotropic medications on her ability to operate a forklift; and (3) Reliance failed to consider the Social Security Administration's finding that Ms. Shepherd was "totally disabled. " The Plaintiff also asks the Court to consider the potential conflicts of interests inherent in Reliance's decision-making process - specifically that (1) Reliance not only decides which claims will be paid, but also is the payor on those claims; and (2) Dr. Hayes was hired and paid by Reliance.

The Court first considers Dr. Hayes' failure to conduct a personal psychological evaluation of Ms. Shepherd. The Sixth Circuit has held that "reliance on a file review does not, standing alone, require the conclusion that [the insurer] acted improperly." Calvert v. Firstar Fin., Inc., 409 F.3d 286, 295 (6th Cir. 2005). However, "... the failure to conduct a physical examination - especially where the right to do so is specifically reserved in the plan - may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." Id.  Here, Reliance's use of a "file review" does not seem improper since Dr. Hayes' evaluation suggests that he thoroughly reviewed Ms. Shepherd's medical record and relied on the evidence therein to form his opinion.

As to Plaintiff's second claim that neither Reliance nor Dr. Hayes adequately considered the effect of the medicines Ms. Shepherd was taking on her ability to operate a forklift, the Court does not believe that the Plaintiff has carried her burden of proving that her medications disable her. Neither Nurse Ard nor Mr. Preuss were concerned about her medications when they believed she could return to work on the day-shift. It was only after that request was denied that Nurse Ard and Mr. Preuss determined that the Plaintiff could not work because of her medications.  There is no competent medical proof in the record to support such a claim and Dr. Hayes cannot be faulted for

failing to consider it.

Further, Reliance cannot be held responsible for failing to consider in its decision-making process the Social Security Administration's finding that Ms. Shepherd was "totally disabled." Although Ms. Shepherd's attorneys noted the SSA's decision in a letter to Reliance, no portion of the SSA's decision, or the findings on which it was based, were ever submitted to Reliance as evidence of Ms. Shepherd's disability.

Finally, the Court considers the potential conflicts of interest which exist since 1) Reliance is authorized both to decide whether an employee is eligible for benefits and is the payor of those benefits; and 2) Dr. Hayes was paid by Reliance. As to the first, the Supreme Court has held that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" Glenn, 461 F.3d 660, 666 (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Additionally, the Sixth Circuit has observed that plan administrators have a "clear incentive to contract with individuals who [are] inclined to find in [their] favor." Calvert, 409 F.3d at 202; Darland v. Fortis Benefits Ins. Co., 317 F.3d 516, 527-528 (6th Cir. 2003). Here, while the Court duly notes these inherent conflicts and their potential effects, based on the administrative record before it, the Court does not conclude that these potential conflicts resulted in an unreasonable or unjust decision as to Ms. Shepherd. There is no evidence to suggest that Dr. Hayes regularly performs evaluations for Reliance or that his opinions are influenced by his desire to continue performing such evaluations.

Accordingly, the Court concludes that it is possible to offer a reasoned explanation, based on the evidence in the record, for Reliance's decision to deny Ms. Shepherd disability benefits, and

that, therefore, the outcome here was neither arbitrary nor capricious.

## IV. Conclusion

For the foregoing reasons, the Court **AFFIRMS** Reliance's decision to deny disability benefits to Ms. Shepherd.

cc: Counsel of Record